O’Nealu, J.
I agree with the defendants, that the Statute of Limitations cannot avail the plaintiffs upon two grounds, to wit: first, the statement in the bill of a running account on the part of General Sumter against the defendants J. B. and C. Morse, from 1817 to 1830, and the allegation in the bill having reference to this account, and the counter account of the said defendants, “that the plaintiff, as the agent of General Sumter, in his lifetime, frequently applied to the said J. B. and C. Morse, and desired them to come to a settlement of their accounts with the said General Sumter, and to pay what upon the balance of their accounts should appear to be due Secondly, the agreement between the plaintiff and the counsel of the said J. B. and C. Morse, that neither of the said parties should plead the Statute of Limitations, and the actual execution of this agreement by the plaintiff, is not pleading the Statute of Limitations until the account had been taken of all the charges on the 'part of the defendants against General Sumter.
First. It is well settled that if there be mutual running accounts between-parties, and any of the items have accrued within the time óf *77 the statute, this amounts to an acknowledgment of the previous account and a promise to pay. Fitch v. Hillary, 1 Hill, 292. I am disposed, however to think, that the reason the statute does not run, in such a case, is because the plaintiff’s cause of action does not accrue to him until the mutual dealing has ceased. It is only at and after the last item, that a balance can be struck; until then it is uncertain who may have the right to sue. I am not speaking now in reference to the exception, in the Statute of Limitations, of accounts which “concern the trade of merchandize between merchant and merchant, their factors and servants,” and as to which it will be unnecessary to give any opinion in this case, but of mutual running accounts existing between the plaintiff and defendants, of any character or kind.
From the statement of the accounts in this case, made by the Commissioner, it appears that from 1811 to the close of 1821, there were mutual running accounts between General Sumter and *J. B. and C. Morse. The statute would (if this was all to prevent) run from [*93 the 1st of January, 1822, and thus entirely exclude this account. But it appears from the bill that the plaintiff’s claims extended down to 1830; and that, in reference to them, as the agent of General Sumter, he frequently called on the defendants J. B. and C. Morse, and requested them to come to a settlement of their accounts with the said General Sumter and pay what upon'the balance of their accounts should appear to be due. This statement on the part of the plaintiff is an admission by General Sumter of the accounts of the defendants as a previous and subsisting debt, which he is willing and liable to pay. For it is in substance saying “here are my accounts extending to 1830, produce yours, deduct the amount and pay the balance. ” After such an acknowledgment made, as we must presume in 1830, for the plaintiff’s account against one of the defendants then ceases, it would be strange indeed if the plaintiff could set up the Statute of Limitations, which his intestate had thus waived. I speak of the acknowledgment, as made by General Sumter himself; for although it was made by the plaintiff, yet it was made by him as the agent of General Sumter, and by his authority,¿and is his acknowledgment, upon the plain legal maxim, “qui faoit per alium, facit per se. ”
Second. That the plaintiff could not, in this case, plead the Statute of Limitations, after his agreement not to plead it, and his actual execution of it, by not attempting to plead it, until the defendant’s accounts had been proved, is, I think, perfectly demonstrable. It is true, that the defendant’s agreement not to plead the statute, would not, as an executory contract, bind him; but in pursuance and in execution of it, he did not plead it; and the question now is not, was he bound by his contract not to plead the statute; but, can he have leave to plead it after he has in pursuance of his agreement declined at the proper time to plead it.
An executor or administrator generally may or may not plead the Statute of Limitations. This privilege is conceded to him as well on account of his legal identity with his testator or intestate, as also on account of his supposed knowledge of the legal liability of his testator or intestate to pay the debt claimed. The only exception to this rule, which has been recognized in this State, is when the debt or demand is *78 .¡.q due in whole or in part to the executor or administrators In such a -1 case the legatees or distributees *have been permitted to plead the Statute of Limitations, notwithstanding the executor and administrator declined to plead it. - In the case before us, the plaintiff is not only the administrator, but also the only distributee, and under such circumstances, his act must have the sanction of every possible legal or equitable interest to sustain it.
He did, in pursuance and in execution of his agreement, decline to plead the Statute of Limitations. For, to the accounts set up by him, the defendants did not by their answer, or on the reference, plead the Statute of Limitations; this was a performance on their part, of that part of Colonel Blanding’s agreement which they were to perform. They could not after this have pleaded it. On the part of the plaintiff, no written replication to the defendant’s answer is required. His objections to the accounts set up by the defendants lay altogether in parol, and ought to have been urged, either before the order of reference was made, so as to have excluded from the account which it directed all the defendants’ accounts; or, at least at the time when the accounts were presented to the Commissioner, and were about to be proved. If the plaintiff had intended to rely on the Statute of Limitations, he should at one or the other of these times have urged it. Not having done so, he ■must be taken in good faith, to have declined to plead it, and be placed in the same situation of the defendants, who after their agreement and answer could not have pleaded it. Would the Court under these circumstances give to either or both of these parties on the application of one of them leave to plead the Statute of Limitations ? Where a party has failed to plead the statute at the proper time, the Court is slow to give him that leave; but after a case is on trial, and the proof is heard on one side, it is then too late to ask leave to file the plea. That was exactly the case here: the Commissioner had heard the defendant’s proofs ; they had legally established their demand, which the plaintiff’s silence as to the Statute of Limitations admitted to be subsisting, and that he was willing and liable to pay. After this, the Commissioner was ■right in refusing to allow him the benefit of the Statute of Limitations ; and the Chancellor erred in allowing to both parties, on the application of the plaintiff alone, the liberty to plead it.
Decree modified.
Johnson, J., and Harper, J., concurred.